(No. 15836.—Judgment affirmed.)

MARY W. HARTSHORN, Plaintiff in Error, *vs.* HENRY BIER-
BOM, Commissioner of Highways, *et al.* Defendants in
Error.

*Opinion filed April 14, 1924—Rehearing denied June 6, 1924.*

1. PRACTICE—*when the motion to take additional testimony
amounts to motion for a new trial.* Where a full hearing on the
merits is had on a petition for *certiorari* to review a proceeding
for vacating a road, and the court quashes the writ and dismisses
the petition, a motion, supported by affidavit, asking leave to fur-
nish additional testimony in opposition to the motion to quash the
writ must be construed as a motion for a new trial.

2. HIGHWAYS—*who is not an abutting owner—vacation.* An
owner of property abutting on a highway is not to be regarded
as an abutting owner as to another road which runs into the for-
mer highway at right angles on the opposite side of said highway
from the owner's land, and he cannot, as an abutting owner, main-
tain a separate action attacking the vacation of such road.

3. SAME—*general rule as to when individual owner cannot at-
tack record of vacation of road.* Parties who do not own any land
over which a vacated highway passes or which abuts upon such
highway, and who are not parties to proceedings to vacate the
same, have only such interest as is possessed by all other mem-
bers of the public residing in the vicinity, and cannot, in their
individual capacity, maintain an action attacking the record of the
corporate authorities vacating the road.

WRIT OF ERROR to the Circuit Court of LaSalle county;
the Hon. EDGAR ELDREDGE, Judge, presiding.

WOODWARD, HIBBS & POOL, and BUTTERS, CLARK &
BUTTERS, for plaintiff in error.

J. E. COLEMAN, W. J. APLINGTON, and DUNCAN &
O'CONOR, (J. E. MALONE, JR., and A. J. O'CONOR, of coun-
sel,) for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error sued out of this court a writ of error
to review a judgment of the circuit court of LaSalle county
quashing a petition for *certiorari* filed in her name. The

petition for *certiorari* questioned the legality of proceedings vacating a road and laying out 'a new one in the town of LaSalle. It averred that on April 11, 1922, a petition was filed in the office of the town clerk of the town of LaSalle praying for the vacation of what is known as the Fifth street road, commencing at a point 170 feet east of the center line of a bridge over the Little Vermilion river, that line being the boundary line between the city and town of La-Salle, and extending easterly to the north and south highway on the east line of section 14. That petition prayed that a new road be laid out 66 feet in width, commencing at a point 170 feet east of the center line of the bridge, thence easterly and northeasterly by curves to the northeast corner of section 14, where the proposed road was to connect with the highway running north and south on the east boundary of section 14. The petition for *certiorari* then sets out that pursuant to the petition therein referred to, the commissioner of highways .assumed to lay out a new road, but that the road was not laid out in accordance with the petition, for the reason that the description of the eastern terminus was not in accordance with that set forth in the petition for the road. It is also alleged that the proceedings before the commissioner were irregular and contrary to law; that proper notice was not given; that the petitioner owns land abutting on the road proposed to be vacated, and that the closing of the road will materially damage and depreciate the value of her land; that the petitioner was out of the county at the time of the proceedings before the commissioner and did not return until after time for appeal had elapsed and had no notice of the proceedings to abandon the road. Notice of the petition for *certiorari* was served on the commissioner of highways and the town clerk of the town of LaSalle. On January 15, 1923, the city of LaSalle and the Alpha Portland Cement Company, located east of the city, were granted leave to interplead and join in a motion theretofore filed by the com-

missioner of highways and town clerk to quash the writ. A hearing was had and evidence taken, at the conclusion of which the circuit court quashed the writ and dismissed the petition. Thereafter a motion was made, supported by affidavit, asking leave to furnish additional testimony in opposition to the motion to quash the writ. As a full hearing on the merits had been had, this must be construed as a motion for a new trial. The motion was overruled.

The errors assigned on the writ of error sued out are, that the road known as the Fifth street road is a State aid road and not under the jurisdiction of the commissioner of highways but under the jurisdiction of the county board, and therefore the commissioner of highways had no authority to vacate the same, and that all proceedings therefor were void; also that the proceedings were fatally defective for the reason that the description of the road to be laid out did not conform to the description in the petition therefor. Defendants in error reply, first, that plaintiff in error owns no property abutting on the Fifth street road and has not shown any damage other than that which would accrue to the general traveling public of that vicinity and has therefore no right to maintain this action in her own name; second, that the record contains no proof that the road is a State aid road, but that, on the other hand, it is a part of the bond issue roads, and as such is under the jurisdiction of the State highway department; third, that there is no variance between the description of the road as laid out and that described in the petition therefor; and fourth, that by reason of large expenditures of money which would be made necessary if these proceedings were quashed, occasioned by the unreasonable delay of plaintiff in error in applying for a writ of *certiorari,* the court was justified in quashing the writ.

The city of LaSalle is located in LaSalle township, in the westerly part of LaSalle county, on the north side of the Illinois river. A few miles directly east is the city of

Utica, and some miles further east, and slightly north, the city of Ottawa. The territory between these cities, especially that lying along the Illinois river, is somewhat broken by hills and ravines. On the east boundary of the city of LaSalle, forming the boundary line thereof, is the Little Vermilion river. Crossing that river east and west is what is known as the Fifth street road. This road is the principal thoroughfare north of the Illinois river connecting LaSalle with the cities east. The Little Vermilion river at this point is crossed by a low-arch stone bridge. The incline from the city to this bridge is very steep. This is likewise true of the road descending from the east to the bridge. In other words, this bridge is a low structure, slightly above flood stage of the river and in the bottom of a deep ravine, through which the river flows. This road, according to the testimony in the record, is narrow, and especially in the steeper places is difficult to keep in passable condition. Because of the difficulty of ingress to and egress from the city of LaSalle over this particular road, and especially the steep incline to and from the bridge, the people of the city of LaSalle had been for a number of years interested in laying out a new road and raising the bridge. This road extended east to the section line road, which extended north a mile and a half, and thence east to the city of Ottawa. Considerable agitation of this question was had through the chamber of commerce of the city of LaSalle, and an attempt had been previously made to remedy this condition of the bridge and to re-locate the Fifth street road so as to acquire a more satisfactory route into the city from the east. It appears from the record that the plaintiff in error had previously opposed this project, and while she says in her testimony that she did not have notice of the closing of the Fifth street road, she also testifies that she did know the bridge was closed and was being changed, and that in the spring she had overheard someone speaking about an intended attempt to close the road. It also appears that much

publicity was given to the matter, public meetings being held and notices thereof being published in the newspapers.

The record shows that for some fifteen years a cement plant has been located in the town of LaSalle east of the Little Vermilion river and south of the Fifth street road. This plant is now owned and operated by the Alpha Portland Cement Company. This company owns all the land on both sides of the Fifth street road proposed to be abandoned. It appears that the road and bridge committee of the chamber of commerce of the city of LaSalle, by George A. Wilson, its chairman, and J. F. Bryon, executive secretary, opened negotiations with the cement company to determine what, if any, concessions it would make to the public to secure a vacation and surrender of the old Fifth street road so as to render accessible to it the limestone in its land north of that road, it being the desire of the citizens of LaSalle to re-locate the road along the west and north sides of the cement company's property and to raise the bridge referred to. Negotiations with the cement company disclosed that it was willing to raise the bridge twenty feet, make the fills on either side of the river, lay out a road on the west and north boundaries of its lands, extending northerly and northeasterly to the northeast corner of section 14, to grade and drain the same, with necessary culverts, and deed the land to the public for road purposes, all without expense to the public, in return for the vacation of the Fifth street road, which extended in an easterly direction through its lands.

The record also shows that those interested in this project were informed that the road in question between LaSalle and Ottawa, as herein described, was a part of route No. 7 of the State bond issue roads provided for in the act of June 22, 1917. Route No. 7 extends from Joliet to East Moline, Illinois, through Ottawa and LaSalle. It therefore became necessary to take up the project with the Department of Public Works and Buildings and the super-

intendent of highways of the State. This was done, and after the correction of some features objected to by the State officers and making changes suggested by them, the State department approved the re-location of the road as a part of route No. 7 of State bond issue roads, and through the director of public works and buildings agreed to put a cement surface on the new road when the grading was completed. A petition was also filed with the commissioner of highways of the town of LaSalle praying for the vacation of the old road from the point where the two roads diverged through section 14 to the intersection of the old road with the public highway extending north and south along the east line of section 14.

The Department of Public Works and Buildings prepared plans and specifications for the new bridge, and the cement company advertised for bids and let contracts for the construction of the same. The city of LaSalle purchased land adjoining the road at the west approach of the bridge to provide ground upon which a new fill was to be made. The plans provided for raising the bridge twenty feet and widening the roadway thereon to thirty feet, the new bridge to be built partly upon and over the old bridge. The work, which was carried on under the direction of Robert H. Bennett, State highway engineer, was started in the early summer of 1922, and on November 28, (the time of the filing of the petition for *certiorari,*) as the evidence shows, was 99.9 per cent completed; that 18.5 per cent of the excavations for the new road and 80 per cent of the culverts therefor had been finished. At that time the road across the Little Vermilion river was obstructed by a bridge structure rising twenty feet above the then roadway and rendering its use impossible. At the time the petition was filed there had been no fills on either side of this bridge. According to the testimony of the engineer, Bennett, some filling had been done at the time of the hearing, but that to fill in on both sides of this bridge so as to make it of use ·

would require 9981 cubic yards of material at the east approach of the bridge and 22,000 cubic yards at the west approach. The record shows that the cost of this fill would be from sixty cents to $1.80 per cubic yard, depending upon the length of the haul necessary to procure materials therefor, and that before either the new or old road can again be used it is necessary, in case these proceedings are quashed, for the city of LaSalle to expend the sum of $13,200 if filling material may be procured at the closest point, or $39,600 if procured at any other point shown by the evidence to be available, in order to fill the west approach, which is inside the city, and that it would cost the town of LaSalle $5988.60 or $17,965.80 to fill the east approach. The record shows that upon the total improvement the cement company has expended an amount in excess of $35,000, and that the total expenditures contemplated to be made by it will aggregate $83,000.

We come first to the question whether or not plaintiff in error had a right to bring this suit. We find that her petition alleges that she owns land abutting on the road and that her land will be greatly damaged by the vacation of the road. The record shows that she owns no land in section 14, where both the old road and the proposed road are laid out, but that her land lies in section 13, east of section 14 and east of and abutting on the road which extends north and south between these two sections. The old Fifth street road opens into the west side of this north and south road at a point opposite the southerly end of her land. It cannot, therefore, be said that she is the owner of property abutting on the Fifth street road. Her petition alleges great damage to her property. The evidence shows that she owns 57 acres in the northwest corner of section 13; that the old Fifth street road came into the north and south road approximately a quarter of a mile south of the north section line, while the proposed road comes in at the junction of the northeast corner of

section 14 with the northwest corner of section 13, which is the northwest corner of plaintiff in error's land. There is no evidence whatever in the record as to any damage that will accrue to the plaintiff in error by the proposed new road. It is shown that in reaching the city of LaSalle from the south end of her 57 acres it will be necessary to travel approximately one-quarter of a mile to the northwest corner of her tract, where the new road joins the north and south road, while from the north end of her land the distance is not increased. The evidence also is that in return she procures the use of a cement highway of the standard width established by the State and access to the city of LaSalle across a bridge twenty feet higher than that formerly crossing the Little Vermilion river and without the steep grades of the old road, so that it cannot be seen that she is in any way damaged. She was in nowise a party to the proceedings for the change of the road and does not in any way show a damage to herself other than that common to the citizens and tax-payers of the town desiring to use the abandoned road.

The rule is that where parties do not own any land over which a vacated highway passes or which abuts upon such highway and are not parties to the proceedings to vacate the same, they have only such interest as is possessed by all other members of the public residing in the vicinity, and cannot, in their personal or individual capacities, be permitted to maintain an action attacking the record of the corporate authorities vacating the road. (*People* v. *Commissioners of Highways,* 240 Ill. 399; *People* v. *County of Vermilion,* 210 id. 209.) In *Winne* v. *People,* 177 Ill. 268, *mandamus* was brought to compel the board of supervisors to grant the prayer of a petition for a division of a township in DeKalb county and the creation of a new town. It was there held that as it did not appear that the relator had such interest in the subject matter of the suit as to entitle him to prosecute a petition for *mandamus,* the writ

should be dismissed on that ground. In *Hamilton* v. *Semet Solvay Co.* 227 Ill. 501, it was held that a court of equity will not enjoin the obstruction of a street on suit by an individual unless such obstruction works a special injury to the complainant. To the same effect is *Guttery* v. *Glenn,* 201 Ill. 275. In *City of Chicago* v. *Union Building Ass'n,* 102 Ill. 379, it was held that the owner of property located some distance from a street proposed to be vacated cannot maintain a bill to enjoin the city and its authorities from vacating such street where it does not appear that he will suffer some special injury different from that of the public generally though in a greater degree. In that case it was also held that the fact that such a vacation of the street would change the complainant's method and place of business and diminish its tenants was not sufficient to warrant the relief prayed. *McDonald* v. *English,* 85 Ill. 232, was a suit for damages alleged to have arisen by reason of the maintenance of a nuisance in the form of an obstruction in the street. The rule is there announced as well settled that the people, only, can complain of an obstruction in streets not resulting in special injury to the individual; that special injury is the gist of the action where brought by an individual and not by the people. In *McPike* v. *Illinois Terminal Railroad Co.* 305 Ill. 298, McPike brought a bill to enjoin the railroad company from trespassing upon certain premises of the city of Alton known as public commons. It was contended on his behalf in that case that as an individual tax-payer and citizen of the city he had a right to sue in his own behalf, and on behalf of other citizens and tax-payers, to enjoin the use of public commons by the railroad company. It was, however, held that an obstruction or misuse of public property held for the use of the public which does not result in special injury to the individual cannot be complained of except by the people. This rule applies here. There is no showing of special injury of any character. While the same is averred in the

bill and plaintiff in error in her testimony says her property will be greatly damaged, this is a statement of her conclusion, unsupported by any evidence in the record. So far as this record shows, she occupies the same position with reference to the Fifth street road as do other people living in that community desiring to use it. This action has not been brought by the people but by plaintiff in error in her own name. She showed no right to the writ.

Owing to the views herein expressed it does not become necessary to decide any other questions raised in the record.

The judgment of the circuit court quashing the writ will therefore be affirmed.

*Judgment affirmed.*